BOOTH, Chief Judge.
This cause is before us on appeal from (1) the order of the Environmental Regulation Commission (ERC) dated February 14, 1985, withdrawing the proposed rule on the classification of the Flagler County Aquifer, and (2) the order of Department of Environmental Regulation (DER) dated March 1, 1985, denying a Section 120.57 hearing. At issue are the procedural requirements of agency rules governing classifications of ground water and the validity of the administrative determinations below denying a hearing under Section 120.57, Florida Statutes, and interpreting the “single source aquifer” requirement to preclude a G-I classification sought by appellants herein.
The first issue, or series of issues, relating to the procedures established by the agency in Rules 17-3.403 and 17-3.404, we leave aside other than to note that the net effect of the procedures established by the rules and the policies in applying these rules is to require affirmative action by one seeking to prevent degradation of the purest quality ground water relied on for drinking. Thus, ERC has classified all drinking water in the state as Class G-II and takes the position that a G-I rating is only obtained by “reclassification.” The result is no G-I ground water classification has been made in Florida at this time. In view of our resolution of the remaining issues, it is unnecessary to address the first issue further.
The facts are essentially undisputed. Appellant Schatz is one of 600 permanent residents of a barrier island and owns property there. All residents are dependent on the aquifer for drinking water and other water uses, with water being supplied by privately owned wells. There are no other fresh water sources,[1] and the island is surrounded by salt water. The ground water sought to be protected is low in dissolved solids, having less than 3,000 mg/1, and is admittedly qualified for a G-I rating based on purity.
Appellee Admiral Corporation (Admiral), a subsidiary of ITT', has planned to develop the island and owns over 75 percent of the area proposed for G-I designation. The Hammock Dunes development proposed will encompass 2,258 acres and will include 6,670 residential units. The projected population is 12,000 to 13,000 new people. Admiral proposes to pipe in water from the *169 mainland and resist the G-I classification of the aquifer, although maintaining that it makes no difference whether the ground water is classified G-I or G-II, in that both afford a potable water source, and that regulation will be the same. Appellees point out that DER will not permit pollution of drinking water in any event.
The Ground Water Administrator of DPR testified that DER’s original position was that the G-I classification was appropriate. Subsequently, however, the orders sought to be reviewed were entered, and appellants were denied both a rule “reclassification” and a Section 120.57 hearing and adjudication. As to the later order, DER concluded that appellant’s failure to seek party status or a “draw-out” in the rule-making proceeding precluded the Section 120.57 hearing.
In the rulemaking proceeding, ERC determined that the water should not be classified G-I because it was not a “single source aquifer” because:
The aquifer does not meet the Florida Administrative Code Rule 17-3.403(6)(e)l requirement that “[t]he aquifer or portion of the aquifer is the only reasonably available source of potable water to a significant segment of the population.”
This determination is based on Admiral’s piping in water from the mainland, a project that is already underway. ERC thus determined that if piped-in water is available, there can be no “single source aquifer,” and by agency rule, G-I classification is precluded.
These proceedings began June 7, 1983, with the filing of a petition to initiate rule-making by Mr. Schatz under Section 120.54 and various agency rules. The petition sought to have three hydraulically-connected surficial aquifers on the island designated Class G-I ground water.[2] The proceedings concluded in February and March of 1985, as indicated with denial of both the relief sought by rulemaking and denial of a Section 120.57 hearing.
We hold that appellants,[3] as substantially affected persons, are entitled to a Section 120.57 hearing on the appropriate classification of the ground water in the Flagler County aquifer. Those appellants who are owners and users of what is admittedly G-I quality water from a natural, existing water source are not required to suffer degradation of the quality of that water simply because a piped-in alternative source is made available by the developer. The interpretation by the ERC is that availability of imported drinking water as an alternative to the natural existing element precludes a finding of “single source aquifer” and G-I classification, thereby permitting the degradation of the existing aquifer. This is contrary to logic and reason[4] and to *170 the rules defining the G-I classification and affording it the greatest possible protection.[5] On the record before us, this interpretation cannot stand. Under Sections 120.68(9) and (12), Florida Statutes (1988), this court is authorized to reverse an agency order which is based on a clearly erroneous interpretation of agency rules or remand an agency order when the agency action is inconsistent with agency rules or policy.
Accordingly, the orders below are reversed and the cause remanded with directions that appellants be afforded a Section 120.57 hearing consistent herewith.
SHIVERS and NIMMONS, JJ., concur.

. Since the institution of these proceedings, ap-pellee Admiral has begun piping water in from Palm Coast for its development, and this water is for sale to other residents as well.

. Proposed Fla.Admin.Code Rule 17-3.407:
17-3.407 Specifically Classified Ground Waters
(1) The following ground waters are classified as G-I single source acquifers:
(a) The surficial acquifers in northeast Fla-gler County included in the area bounded on the east by the Intracoastal Waterway; on the west by the Atlantic Ocean; on the north by the north line of Section[s] 8 and 39, Township 10 South; and, on the south by a line running due east and west from a point along the east-west boundary of Sections 9 and 10, Township 11 South, where that point intersects the northern extension of the mean high water line of Fox’s Cut.

. As to appellant Florida Wildlife Federation (FWF), this court denied appellees’ motion to dismiss for lack of standing after the Environmental Regulation Commission stated, in response to a court order, that FWF would have been granted party status to the rulemaking proceeding had it requested. Further, the record shows that members of the FWF are residents of the island whose interests are substantially affected by the ground water classification.

. The fatal flaw in the agency’s interpretation in this respect was stated by the Commission Chairman (Record Vol. Ill, p. 16):
The problem as I see it, the rule has got to be changed [referring to Rule 17-3.403(6) ]. That’s the problem. Whatever we do here today will not change in my judgment the flaw in the rule, which obviously is that you always defeat an aquifer being sole source if you run a pipe in from outside. That’s the rule we drew up, and it’s not a good rule. It’s got to be changed, because that's not the intent of it. (emphasis added)

. Rule 17-3.403(2), Fla.Admin.Code:
(2) It shall be the Department policy to afford the highest protection to single source aquifers..,.